**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Leann L. Baldock

    v.                                          Case No. 21-cv-972-SM

Kilolo Kijakazi, Acting
Commissioner of Social Security

## Report and Recommendation

Leann L. Baldock, who is proceeding pro se, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Social Security Administration to deny her claim for disability insurance benefits under Title II of the Social Security Act. In support, Baldock contends that that the Administrative Law Judge ("ALJ") erred in finding that she is not disabled based on her physical and mental health conditions. The Acting Commissioner moves to affirm the decision.

## Standard of Review

For purposes of review under §§ 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Id. at 1154. The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In making a disability determination, an ALJ follows a five-step process, asking "questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433. The steps are as follows: (Step 1) whether the claimant is currently engaging in substantial gainful activity; if not, (Step 2) whether the claimant has a severe impairment; if so, (Step 3) whether the impairment meets or medically equals an entry in the Listing of Impairments; if not, (Step 4) whether the claimant's residual functional capacity is sufficient to allow her to perform any of her past relevant work; and if not, (Step 5) whether, in light of the claimant's RFC, age, education, and work experience, she can make an adjustment to other work available in the national economy. Id. (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The claimant bears the burden of showing she is disabled through the first four steps, but at

2

Step 5 the Commissioner must provide evidence to show that there are jobs in the national economy that the claimant can do.  Id. at 434.

## Background

Baldock applied for social security benefits in September of 2019 when she was forty-two years old.  Baldock had a history of anxiety and depression that was treated by her primary care physician.  Baldock also had been diagnosed with congenital heart disease and anemia.

As part of the application process, Baldock was examined by a state agency consultant, Philip Robbins, Ph.D., in January of 2020.  Based on his examination, Dr. Robbins reported good results in the areas of communications, concentration, and psychiatric functioning.  He diagnosed persistent depressive disorder under good control and panic disorder under good control.  He found Baldock capable of managing her own finances and assessed a good prognosis.

Baldock described her activities of daily living in her statement submitted in support of her application, which is dated October 22, 2019.  She reported that she had frequent fainting episodes and shortness of breath.  She stated that she helped her daughter get ready for school, went to the food pantry with a friend, sometimes fed her cat and dumped the kitty litter, did her own personal care although it took longer, made

meals for her daughter, did cleaning and laundry with some help, and went outside daily to go shopping or to sit on her steps. She was able to drive a car and ride in a car. She paid her bills and handled her accounts.

In the course of the administrative proceedings, state agency consultants provided residual functional capacity assessments. In January of 2020, Dr. Jonathan Jaffe found that Baldock had the physical functional capacity to do work at the light exertional level, limiting standing and walking to four hours and sitting to six hours, with occasional postural activities. In April of 2020, Dr. Diana Dorsey also found that Baldock had the same physical functional capacity. Psychologists Dr. Landerman and Dr. Schneider found that Baldock's psychological diagnoses caused at most only mild limitations.

Baldock's application for benefits was denied, and she requested a hearing. A hearing was held by telephone before an ALJ on November 12, 2020. Baldock was represented by counsel and testified at the hearing. A vocational expert also testified.

Baldock testified that she had fainting spells that occurred monthly and had had an episode six weeks before the hearing. She did not go to her physician after that episode. In addition to fainting, Baldock said that she was tired all the

4

time and could not do her prior work as a licensed practical nurse. She said that her fatigue had gotten worse and that she slept on the couch to avoid going upstairs to her room. She testified that her twelve-year old daughter had learned to help. She said she was not able to do cooking and cleaning, except a little sweeping with the help of a neighbor.

The ALJ issued a decision on December 10, 2020. The ALJ found at Step 2 that Baldock had severe impairments of heart disease and anemia. With respect to her mental health issues, the ALJ concluded that the record did not show that the mental impairments would cause more than minimal limitations, and for that reason, were not severe.

The ALJ noted that Baldock's medical treatment notes showed that she had experienced fatigue and fainting due to anemia that was addressed with treatments and had improved. As a result, Baldock experienced less fatigue and had no reports of fainting in her records. The ALJ also noted a lack of reports by Baldock during medical treatment of shortness of breath.

The ALJ found that Baldock had the residual functional capacity to perform light work except that she could stand or walk for four hours and sit for up to six hours, could not do climbing, could occasionally do stairs and ramps, and could occasionally do postural activities. Based on the vocational expert's testimony at the hearing, the ALJ found that Baldock

5

could do her prior work as a medical secretary. The ALJ also found that there were other jobs that Baldock could do. As a result, the ALJ found that Baldock was not disabled. The Appeals Council denied her request for review on October 21, 2021, making the ALJ's decision the final decision in the case.

## Discussion

Baldock contends that the ALJ's decision should be reversed because she did not adequately consider the severity of Baldock's medical problems and did not consider her statement about her daily activities in support of her application for benefits. She also contends that the ALJ erred in not considering her psychological problems and emotional difficulties. The Acting Commissioner moves to affirm on the ground that substantial evidence supports the ALJ's decision.

### A. Functional Capacity

In essence, Baldock challenges the ALJ's finding as to her physical residual functional capacity. A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations." § 404.1545(a)(1). That determination is made based on all of the evidence in the case record, including medical and other evidence. Id.

The ALJ reviewed Baldock's medical records that showed the diagnoses of heart problems and anemia and the treatment she has

6

received. The ALJ noted that the fainting and fatigue Baldock experienced were determined by medical providers to be related to her anemia. She then had treatment for anemia which had improved that condition to a normal blood count by March of 2020. Baldock reported improvement in her symptoms to her medical providers. Contrary to her hearing testimony, the ALJ noted that there was no medical evidence that she continued to have fainting episodes or fatigue at the level she described. The ALJ found that the discrepancy between Baldock's hearing testimony and the medical record decreased the persuasiveness of Baldock's testimony.

Although Baldock faults the ALJ for not considering her report of daily activities in her statement with her application, she is mistaken. The ALJ did consider her statement and noted that the activities she reported in the statement were fairly extensive in contrast to the limited activities she described in her hearing testimony. The ALJ again found that the inconsistencies between the initial report and the hearing testimony made her testimony less persuasive.

The ALJ relied in part on the residual functional capacity opinions provided by Dr. Jaffe and Dr. Dorsey. The ALJ found that those opinions were consistent with the medical record and were well supported by the evidence they cited. The ALJ noted that Dr. Jaffe and Dr. Dorsey did not review later medical

evidence but found that the additional medical evidence did not show any significant worsening of Baldock's impairments.

The ALJ's residual functional capacity assessment is supported by substantial evidence.

### B. Psychological Impairments

Baldock also contends that the ALJ's decision should be reversed because the ALJ failed to find a severe impairment due to her psychological problems and emotional difficulties. When the ALJ continues past Step 2, a finding that an impairment is non-severe at Step 2 is harmless unless the claimant can show with medical evidence that the impairment would change her residual functional capacity in her favor. Joshua S. v. Kijakazi, 20-cv-427-JDL, 2021 WL 5036015, at *3 (D. Me. Oct. 27, 2021); McCusker v. Saul, 19-cv-853-PB, 2020 DNH 196, 2020 WL 6580598, at *6 (D.N.H. Nov. 10, 2020).

Baldock points to no evidence in the record to support her argument. In contrast, Dr. Robbin's report, based on his consultative examination, demonstrates that Baldock had no severe mental impairments. Dr. Landerman and Dr. Schneider also found no severe mental impairments. Therefore, substantial evidence supports the ALJ's finding that Baldock did not have severe limitations at Step 2 of the analysis.

## Conclusion

For the foregoing reasons, the district court judge should deny Baldock's motion to reverse (document no. 8) and grant the Acting Commissioner's motion to affirm (document no. 10).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 25, 2022

cc:  Leann L. Baldock, pro se
     Hugh Dun Rappaport, SAUSA